172 Cal.App.4th 1112 (2009)
___ Cal.Rptr.3d ___
MICHAEL RAY LINTHICUM et al., Plaintiffs, Cross-defendants and Appellants,
v.
JOHN LOCKE BUTTERFIELD et al., Defendants, Cross-complainants and Respondents.
No. B199645.
Court of Appeals of California, Second District, Division Six.
April 2, 2009.
As modified April 8, 2009.
*1115 Grokenberger & Smith, David M. Grokenberger; and Diane M. Matsinger for Plaintiffs, Cross-defendants and Appellants.
Robert Bjorklund and Roxanne Bjorklund, in pro. per.; Hollister & Brace, John S. Poucher and Marcus S. Bird for Defendants, Cross-complainants and Respondents.

OPINION
GILBERT, P. J.
When does a trial court properly exercise its discretion to create an equitable easement? This case provides a good example.
Plaintiffs bought a parcel of land on which defendant owners of neighboring parcels used a roadway, the only access to their land. Plaintiffs sought an injunction to prevent defendants from using the roadway. Defendants cross-complained to quiet title to an easement for the roadway. The trial court quieted title to an equitable easement in favor of defendants. We remand for the trial court to specify the width of the roadway easement, reverse an unrelated cause of action regarding a utility easement, and otherwise affirm.

FACTS
This case concerns a large tract of mountainous land located near Los Padres National Forest in Santa Barbara County. Originally, the entire tract belonged to the United States government (government).
In 1891, the government patented what would become parcels 2 through 10 to Thomas Bush. The government kept parcel 1. Francis Griswold obtained parcels 2 through 10 in 1943. A public road, San Marcos Road, gave Griswold direct access to his parcels.
Griswold also wanted access to San Marcos Road over a portion of parcel 1. In 1947, he obtained a special use permit (SUP) from the United States *1116 Forest Service (Forest Service) to grade a roadway over parcel 1. The SUP provided for a 66-foot-wide right-of-way. It allowed a 12-foot-wide road over the right-of-way.
Griswold conveyed parcels 2 through 10 to Robert Hyde in 1949. The Forest Service reissued the SUP in Hyde's name.
In 1958, Hyde conveyed parcel 4 to William Tighman, reserving an easement over parcel 4 for ingress and egress to the remainder of parcels 2 through 10.
In 1961, Hyde granted parcels 2 through 8A to Robert Bjorklund (Bjorklund). Included in the conveyance was an easement over parcel 4.
In 1976, Hyde deeded parcels 9 and 10 to Ygnacio Valley Group, Inc. (Ygnacio). The conveyance purported to grant easements over parcels 2 and 8. Hyde, however, had previously conveyed parcels 2 and 3 to Bjorklund.
Anne Bjorklund retained parcel 2, and sold parcels 3 through 8A. John Locke Butterfield and Elizabeth Butterfield entered into a contract of sale for parcel 6 in 1969 and obtained a grant deed for the parcel in 1974. Michael and Susan Kitahara and Robert and Karin Lynch obtained parcel 7 in 1991. Joseph Sayovitz, Jr., obtained parcels 8 and 8A in 1977 and 1986. Robert and Roxanne Bjorklund (the Bjorklunds) purchased parcels 9 and 10 during the course of this litigation.
The Forest Service retained parcel 1, over which the disputed roadway runs, until 1998 when it conveyed the parcel to Jerrold Jensen in exchange for another parcel.
From the time Hyde purchased his parcels 2 through 10 in 1949, none of the property owners had the SUP reissued in their names.
Sayovitz testified that he purchased his parcel from a Forest Service employee in 1977. There was no access other than the roadway. He believed he had a lawful easement across parcel 1 to San Marcos Road. The Forest Service did not contact Sayovitz about the SUP until 1993. A Forest Service employee told Sayovitz she would send him an application package that he could review with his lawyer. He never received the application nor heard anything further from the Forest Service. He assumed the Forest Service conceded he had a valid right-of-way. Sayovitz testified his property would lose all value without the roadway.
John Butterfield testified he has lived on his parcel since 1969. The roadway over parcel 1 is and has been the only access to his property. He has *1117 maintained his access over the roadway for over 35 years. He had no knowledge that the roadway crossed over what had been Forest Service land. Without the roadway, his property would be worthless.
Robert Lynch testified he lived on his parcel from 1979 until the Painted Cove fire in 1990. He believed he had a deeded easement over parcel 1. He never had any contact with the Forest Service. Without the roadway, his property would have no value.
Anne Bjorklund testified she used the roadway over parcel 1 for 55 to 60 years. There is no other way to access her parcel.
Michael Ray Linthicum and Myla Reizen acquired parcel 1 in 2000. Linthicum has lived in the area since 1974. Prior to the purchase of parcel 1, they investigated the Forest Service files and conducted a site view of the parcel.
During the course of the litigation, Linthicum and Reizen obtained a certificate of compliance from the county designating a portion of parcel 1 as a separate parcel. The new parcel is known as parcel 1-A. The dividing line between parcel 1 and parcel 1-A is San Marcos Road, which the county owns in fee. The roadway in contention now runs over parcel 1-A. Linthicum and Reizen continue to own parcels 1 and 1-A.
Patrick Pontes is a former Forest Service district ranger. Pontes testified that, in the view of the Forest Service, the SUP did not terminate when Hyde transferred his property. It is the practice of the Forest Service to consider the SUP "still valid and simply needing to be reissued."
Ronald Sickafoose, a civil engineer with Penfield & Smith, and Robert Pride, a geotechnical engineer, testified about alternative access to defendants' parcels. Features of the proposed alternatives include a 40-foot-high retaining wall and moving almost 40,000 cubic yards of earth. Sickafoose testified that obtaining county approval for any of the alternatives was "uncertain."
At the request of the parties, the trial court conducted a site visit. After viewing the terrain where the proposed alternative driveway would be situated, the court concluded that "the slope is extremely steep and looked to be impossible to develop."
Jennifer Kinnahan, a senior planner with Penfield & Smith, testified there are nine possibilities for Linthicum and Reizen to build a home on parcel 1-A, leaving the disputed roadway in place.
*1118 The trial court found: The roadway over parcel 1-A was and is the only possible access way to defendants' parcels. An alternative access cannot be developed. Plaintiffs will be able to enjoy the full use of parcel 1-A with the roadway remaining where it is. The balance of equities favors defendants' continued use of the roadway. The judgment quiets title to a right-of-way 66 feet wide over parcel 1-A. The judgment awards no damages.

DISCUSSION

I
Linthicum[1] contends there is no legal or factual basis to support the finding of an equitable easement.
(1) Through the doctrine of "balancing conveniences" or "relative hardship," the trial court may create an easement by refusing to enjoin an encroachment or nuisance. (See 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 172, pp. 498-501.) Christensen v. Tucker (1952) 114 Cal.App.2d 554 [250 P.2d 660], sets forth the factors that the trial court should consider in exercising its discretion to deny an injunction: "1. Defendant must be innocentthe encroachment must not be the result of defendant's willful act, and perhaps not the result of defendant's negligence. In this same connection the court should weigh plaintiff's conduct to ascertain if he is in any way responsible for the situation. 2. If plaintiff will suffer irreparable injury by the encroachment, the injunction should be granted regardless of the injury to defendant, except, perhaps, where the rights of the public will be adversely affected. 3. The hardship to defendant by the granting of the injunction must be greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the defendant. But where these factors exist, the injunction should be denied, otherwise, the court would lend itself to what practically amounts to extortion." (Id. at pp. 562-563.) Doubtful cases should be decided in favor of granting an injunction. (Id. at p. 562.)
Linthicum argues the trial court failed to follow Christensen and resolve all doubts in his favor. Instead, he claims the court rewrote the rule by stating it should consider the parties' conduct to determine who is responsible for the dispute.
It is true Christensen provides that doubtful cases should be decided in favor of granting the injunction. But this is not a doubtful case. The trial *1119 court found that the roadway is the only access to the Butterfields' parcels. This finding was based on the trial court's site visit and expert testimony that construction of an alternative route involves significant engineering problems and the county's approval would be doubtful.
In contrast, the trial court found that leaving the roadway in place would not affect Linthicum's right to fully develop parcel 1-A. This finding was based on a planner's expert testimony that there are nine possibilities to build a home on the parcel with the roadway in place. Thus the trial court balanced the catastrophic loss to the Butterfields should the injunction be granted, against no or insignificant loss to Linthicum should an injunction be denied.
Nor did the court rewrite the rule by stating it should consider the parties' conduct to determine who is responsible for the dispute. Christensen states that "the court should weigh plaintiff's conduct to ascertain if he is in any way responsible for the situation." (Christensen v. Tucker, supra, 114 Cal.App.2d at p. 563.)
Contrary to Linthicum's assertion, the court did not decide he is responsible for the dispute because he brought a quiet title action. The court found Linthicum is responsible for the dispute because he purchased parcel 1 with full knowledge of the historical use of the roadway, and made a concerted effort to deprive the Butterfields of the value and use of their properties.
Linthicum argues the Butterfields are not innocent. He quotes Christensen: "[T]he encroachment must not be the result of defendant's willful act, and perhaps not the result of a defendant's negligence." (Christensen v. Tucker, supra, 114 Cal.App.2d at p. 563.) It is well settled that the doctrine of balancing conveniences does not apply to willful conduct. (13 Witkin, Summary of Cal. Law, supra, Equity, § 170, pp. 496-497.) But negligence is another matter. The doctrine presumes the defendant is a wrongdoer. (Christensen, supra, at p. 562.) It could hardly be applied if a showing of some negligence is in every case enough to defeat its application.
(2) The trial court's exercise of discretion to determine whether to grant or deny an injunction is based on equitable principles. (See 13 Witkin, Summary of Cal. Law, supra, Equity, § 169, p. 496.) The question whether the defendant's conduct is so egregious as to be willful or whether the quantum of the defendant's negligence is so great as to justify an injunction, is a matter best left to the sound discretion of the trial court. In exercising that discretion, the court must consider the conduct and intent not only of the defendant, but also of the plaintiff. (See Christensen v. Tucker, supra, 114 Cal.App.2d at p. 563.) The trial court's consideration of the conduct of the parties must in turn be made in light of the relative harm that granting or withholding an injunction will do to the interests of the parties.
*1120 Here Linthicum complains that Bjorklund and Sayovitz failed to obtain SUP's after the Forest Service advised them they must apply for them; all defendants were negligent in assuming the roadway crossed Bjorklund's property, an erroneous assumption that could have been corrected by conducting a title search; and there was evidence that the structures in which several defendants resided were not properly permitted by the county. For these alleged offenses, Linthicum would have the trial court deny the Butterfields access to their properties, even though the access roadway does not substantially interfere with Linthicum's right to use and develop his own parcel. Suffice it to say, the trial court acted well within its discretion in denying the injunction.
Linthicum argues the trial court failed to balance all the hardships. His argument is based on a view of the evidence most beneficial to his case. But we must view the evidence in a light most favorable to the prevailing party. (Rodney F. v. Karen M. (1998) 61 Cal.App.4th 233, 241 [71 Cal.Rptr.2d 399].)
For example, Linthicum argues that the Butterfields have alternative routes to access their parcels. But that is directly contradictory to the trial court's finding that alternative routes cannot be developed. That some of the deeds to the Butterfields' properties reserve easements for access, does not mean those paper agreements can be developed into actual access.
(3) Linthicum's argument that the continued existence of the driveway will prevent him from developing his parcel is also directly contradictory to the trial court's finding. In fact, the argument is based in part on Linthicum's testimony which the trial court expressly found not to be credible. The trial court balanced all the hardships.

II
Linthicum contends the trial court erred in failing to award damages.
(4) It is true that when the trial court creates an easement by denying an injunction, the plaintiff is ordinarily entitled to damages. (See Christensen v. Tucker, supra, 114 Cal.App.2d at p. 559 [the court may deny an injunction and compel plaintiff to accept damages].)
Here Linthicum testified the financial impact of the roadway to parcel 1-A exceeds $900,000. But that amount is based on the theory that the roadway prevents all development, a theory the trial court expressly rejected. Instead, the trial court found the roadway did not prevent Linthicum from fully developing his parcel.
*1121 Bjorklund and Butterfield testified that they valued the roadway at $12,000. But there is nothing in the record that compelled the trial court to accept their evaluation.
(5) The trial court cannot award damages in the abstract. As plaintiff, Linthicum has the burden of proof on damages. (See Wardrop v. City of Manhattan Beach (1958) 160 Cal.App.2d 779, 791 [326 P.2d 15]; Sherman v. Associated Telephone Co. (1950) 100 Cal.App.2d 806, 808 [224 P.2d 846].) Linthicum points to no credible evidence of the amount of damages. Under the circumstances, the trial court did not err in failing to award any.

III
Linthicum contends there is no factual or legal basis for a right-of-way 66 feet wide.
(6) The scope of an equitable easement should not be greater than is reasonably necessary to protect the defendant's interests. (Christensen v. Tucker, supra, 114 Cal.App.2d at p. 563; Hirshfield v. Schwartz (2001) 91 Cal.App.4th 749, 763-764, fn. 9 [110 Cal.Rptr.2d 861].) All that is necessary to protect the Butterfields' interest in their properties is a roadway sufficient to provide reasonable access to their parcels and which conforms to governmental regulations governing such roadways.
The original Forest Service SUP allowed only a 12-foot-wide roadway over the 66-foot-wide right-of-way. Bjorklund testified the existing roadway is 25 feet at its widest part. The Butterfields argue the trial court's site view alone is sufficient to support a 66-foot-wide right-of-way. (Citing 1st Olympic Corp. v. Hawryluk (1960) 185 Cal.App.2d 832, 837 [8 Cal.Rptr. 728].) But we are unconvinced. The court stated in its statement of decision that its site visit showed the terrain was too steep for an alternative route. The court said nothing about the scope of the right-of-way. Given the present width of the roadway, it seems highly unlikely that a 66-foot-wide right-of-way is necessary.
An abundance of caution is warranted when imposing an easement on an unwilling landowner. The best solution is to remand so that the trial court can clarify the judgment with regard to the width of the roadway. The court may consider expert opinion on what is reasonably necessary to provide legal access to the Butterfields' parcels.

IV
Linthicum contends the statement of decision and the judgment are fatally inconsistent with respect to Bjorklund's claim to an easement for utilities.
*1122 Linthicum's complaint alleged a second cause of action for quiet title against the Bjorklunds only. Linthicum sought to quiet title against any claim of an easement for utilities across Linthicum's parcels. The Bjorklunds denied the material allegations of the second cause of action, but did not seek to quiet title to a utility easement on their own behalf in their cross-complaint.
Southern California Edison (SCE) and Verizon appeared in the action claiming a utility easement across Linthicum's parcels. Linthicum reached a pretrial settlement with the utility companies. The agreement provided that if Linthicum prevailed in his action to quiet title against Bjorklund's claim for a utility easement, Linthicum could move the utility lines at his own expense. The trial court approved the settlement as being in good faith.
At trial, both in their opening statement and in their closing trial brief, the Bjorklunds denied they ever claimed an easement for utilities across Linthicum's property. The Bjorklunds' closing trial brief states in part, "[T]he Bjorklunds are entitled to judgment in their favor on the plaintiff's second cause of action for quiet title . . . because . . . [plaintiffs] do not need a judgment against the Bjorklunds to move those wires. The evidence established that the plaintiffs could have the wires moved at any time. Litigation on this issue was totally unnecessary."
In its statement of decision, the trial court stated that Linthicum could move the power poles at his own expense as provided in the settlement agreement. Nevertheless, the trial court gave judgment to the Bjorklunds on Linthicum's second cause of action to quiet title against a claim for a utility easement. The judgment also incorporated the settlement between Linthicum and SCE and Verizon, and provides SCE and Verizon are bound by the judgment.
(7) The trial court's grant of judgment in favor of the Bjorklunds on Linthicum's second cause of action was error. The Bjorklunds clearly disclaimed any easement for utilities across Linthicum's property. In a quiet title action, a defendant who disclaims an interest in the plaintiff's land is not entitled to judgment in his favor. (Bradley Co. v. Ridgeway (1936) 14 Cal.App.2d 326, 337 [58 P.2d 194].) Instead, the judgment should quiet title against the disclaiming defendant. (Ibid.) The judgment in favor of the Bjorklunds on Linthicum's second cause of action must be reversed.

*1123 V
Linthicum contends the Bjorklunds are not entitled to a cost award under Code of Civil Procedure section 998 (section 998). He claims the record shows the Bjorklunds did not obtain a judgment more favorable than their section 998 offer.
The Bjorklunds' section 998 offer provided that Linthicum grant them a right-of-way easement for ingress and egress and for "utility purposes." In exchange, the Bjorklunds agreed they would (1) recognize an agreed boundary line between the parties' properties; (2) not seek an easement by necessity over other property owned by Linthicum; and (3) not oppose Linthicum's effort to split his lot. Further, each side is to bear its own costs with a mutual release of all current claims.
The trial court denied Linthicum's motion to tax costs, and awarded the Bjorklunds $76,888.50 for costs of experts.
(8) The purpose of section 998 is to encourage parties to accept reasonable settlement offers. (Poster v. Southern Cal. Rapid Transit Dist. (1990) 52 Cal.3d 266, 270 [276 Cal.Rptr. 321, 801 P.2d 1072].) Section 998, subdivision (c) provides that if an offer made by a defendant is not accepted and the plaintiff does not obtain a more favorable judgment, the plaintiff may be required to pay expert witness costs. Section 998, subdivision (d) provides that if an offer made by a plaintiff is not accepted and the defendant does not obtain a more favorable judgment, the defendant may be required to pay expert witness costs.
Thus section 998 provides a sanction against the rejecting offeree unless the offeree obtains a more favorable judgment than the offer. The question is therefore not whether the Bjorklunds as offerors obtained a more favorable judgment than their offer. Instead, the question is whether Linthicum as the rejecting offeree obtained a judgment more favorable than the offer. The question is addressed to the discretion of the trial court. (Arias v. Katella Townhouse Homeowners Assn., Inc. (2005) 127 Cal.App.4th 847, 854 [26 Cal.Rptr.3d 113].)
Here Linthicum lost the chief objective of the litigation: enjoining use of the roadway. It is true Linthicum obtained the right to remove the utility lines. But even that victory is questionable. If Linthicum wants to move the utilities, he must pay for it. Linthicum also lost on the Bjorklunds' offer that each party bear his own costs.
Linthicum asserts that the Bjorklunds' offer demanded that he accept the Forest Service line as the boundary between their properties. Linthicum *1124 points to a subsequent survey that shows the true boundary to be on the Bjorklunds' parcel. But the Bjorklunds did not demand that Linthicum recognize the Forest Service line. The section 998 offer makes it clear that the Bjorklunds' offer to recognize the Forest Service line was intended for the benefit of Linthicum.
Moreover, the judgment does not settle the boundary with the Bjorklunds in favor of Linthicum. The boundary was not even an issue in the case. The judgment is silent about the location of the boundary.
The trial court did not abuse its discretion in determining that the judgment is not more favorable to Linthicum than the section 998 offer.
The case is remanded for the trial court to specify the width of the roadway easement. The judgment in favor of the Bjorklunds on Linthicum's second cause of action is reversed. In all other respects, the judgment is affirmed. Costs are awarded to respondents.
Yegan, J., and Perren, J., concurred.
NOTES
[1] Linthicum and Reizen are collectively "Linthicum." All defendants are collectively "the Butterfields."