Filed 10/1/15  White v. Pimlott CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARIBETH MERCADO WHITE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KEN PIMLOTT, as Director, etc.,<br><br>    Defendant and Respondent. | A141475<br><br>(Mendocino County<br>Super. Ct. No. SCTM-CVPT-12-60903) |
| MARIBETH MERCADO WHITE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DEL WALTERS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | A142886<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CVG-10-55754 |

In this consolidated appeal, plaintiff Maribeth Mercado White appeals from the trial court's judgment in favor of defendant California Department of Forestry and Fire Protection (Cal Fire) on her claim for an equitable easement over an access road to her property.  She also challenges the court's order denying her petition for writ of mandamus as to Cal Fire Director Ken Pimlott's denial of reconsideration of her administrative request for the easement.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*I.    Background*

Plaintiff owns a 40-acre parcel in Fort Bragg that is bounded on three sides by the Jackson Demonstration State Forest (JDSF), which is owned by the State of California

and managed by Cal Fire. The remaining side is bordered by two privately owned parcels. She has owned or co-owned her parcel since 1998, following her marriage to the now-deceased William White. William and his brother Robert White originally obtained the parcel in 1973 for approximately $60,000. William obtained full ownership of the parcel in 1991.

The JDSF is a 48,652-acre forest located in Mendocino County between Fort Bragg and Willits. It is the largest of California's demonstration state forests. These forests are mandated to conduct research, demonstrations, and education on sustainable forestry practices using active forest management techniques, including periodic timber harvests.

The dirt roadway that is the subject of this action (the access road) has historically provided regular vehicular access to plaintiff's land. The access road extends from the end of the county-maintained section of Mitchell Creek Drive, traversing other private property as well as JDSF land. Plaintiff's parcel has no recorded easement for the access road or for any other road providing entry to her parcel.

On May 31, 1983, a JDSF forest manager sent Robert and William a letter inviting them to apply for an easement. The letter opined that because they lacked an easement, their presence on the access road constituted a trespass.

On or about June 10, 1983, Robert replied to the JDSF by letter, suggesting he had an interest in obtaining an easement.

On May 15, 1985, the JDSF forest manager sent another letter to the White brothers, noting there was no record that an actual request for an easement had been prepared or forwarded to the agency for approval.

On October 28, 1994, another JDSF manager sent Robert a letter advising him that large amounts of hazardous waste and other trash were being dumped near the access road because his tenants failed to ensure the entry gates were kept closed. Access by trespassers was also resulting in illegal campfires, tree poaching, firewood theft, and a network of unauthorized roads. Consequently, the access road would be permanently

2

closed. The letter again noted that while Robert had sent correspondence in 1983 indicating a desire to obtain an easement, no action had been taken.

On October 6, 2005, the JDSF sent William a letter, observing it had been over 10 years since it had sent the notification about the proposed road closure. While the agency had not followed through with the closure, the letter explained that the problems caused by the unlocked access road were continuing. Consequently, the gates would be repaired and the Whites would be issued keys. The JDSF would allow the road to remain open provided the gates were kept locked.[1]

On October 8, 2005, plaintiff and William sent a reply to the JDSF protesting that the agency was being unfair because it was not practicable to keep the gates locked at all times.

In 2006, the parties engaged in negotiations for formalizing the status of the access road. Plaintiff's attorney indicated that plaintiff was intending to sell the property at a list price of $1.5 million.[2]

On May 21, 2008, Cal Fire sent plaintiff's attorney a letter acknowledging receipt of plaintiff's request for an easement for access to her property. The letter requested results of a title search documenting her need for access.

On July 30, 2009, plaintiff's attorney sent a letter to Cal Fire indicating no other access options were available, and confirmed she was seeking a formal easement from the agency.

On August 4, 2009, plaintiff submitted a proposal for a deeded access easement pursuant to Board of Forestry and Fire Protection Policy No. 0351.8 (Policy 0351.8).

On March 15, 2010, then Cal Fire Director Del Walters (Director) signed a letter denying plaintiff's request for a permanent easement. The letter indicated the agency's position that plaintiff had not satisfactorily demonstrated alternative access routes were unavailable. Additionally, the agency determined that granting an easement would

---

[1] The parties have stipulated that Cal Fire has never blocked access to plaintiff's property.

[2] By September 2012, plaintiff had reduced the listing price to $559,000.

3

adversely impact the JDSF's "legislatively mandated function as a working forest for research and demonstration of economical forest practices." However, Walters indicated Cal Fire would continue to allow plaintiff full access to her property along the same route that she was seeking for the permanent easement. [3]

## II. Plaintiff's Complaint

On June 23, 2010, plaintiff filed a first amended complaint stating claims for quiet title, inverse condemnation, slander of title, breach of contract, interference with prospective economic advantage, state and federal due process violations, and declaratory relief as to her right to access her property. In her pleading she alleged that Cal Fire's refusal to grant an easement had significantly depreciated the property's value, and had made it difficult or impossible to sell the property or obtain refinancing. In her quiet title claim, she alleged a right to an easement by necessity, by implication, or under presumed equitable principles.[4]

On September 10, 2010, the trial court ruled on Cal Fire's demurrer to the first amended complaint. The court overruled the demurrer as to plaintiff's quiet title claim and her cause of action for declaratory relief. The demurrer was sustained without leave to amend as to the remaining causes of action.

On February 22, 2011, plaintiff filed a second amended complaint with claims for quiet title, declaratory relief, and writ of mandate. In the writ of mandate claim, she asserted Cal Fire had acted arbitrarily and capriciously and abused its discretion in its application of state law and Policy 0351.8 by refusing to grant her an easement. The mandamus action was eventually severed for hearing.

On January 31, 2012, the trial court filed its order denying the petition for writ of mandamus contained in plaintiff's third cause of action. The court found the Director

---

[3] We note each of the trial judges who heard features of this action below acknowledged the willingness of Cal Fire to allow plaintiff access to or "use" of the roadway without the grant of an equitable easement. At oral argument, counsel for defendant agreed with this observation.

[4] Plaintiff subsequently dismissed her theories of easement by necessity and by implication.

4

had not abused his discretion when he denied plaintiff's request for an easement on March 15, 2010. The court found the Director's conclusion that other potential access routes " 'showed promise' " and " 'did not seem to have been pursued to conclusion' " was not unfounded. There was also support for the Director's position that granting a permanent easement would be adverse to the JDSF's function. Finally, the court noted Cal Fire continued to allow plaintiff to use the access road and that she could resubmit her request after she obtained more information.

On February 2, 2012, the trial court filed its order granting Cal Fire's motion for summary adjudication on plaintiff's prescriptive easement claim and her easement by estoppel claim.

On October 11, 2012, the trial court bifurcated the issue of the applicability of the statue of limitations to plaintiff's cause of action for an equitable easement.

On August 26, 2013, the trial court filed its ruling on the issue of the applicability of the statute of limitations. The court ruled against Cal Fire as to the triggering of the statute of limitations.

On May 28, 2014, the trial court filed its ruling after trial on the equitable easement claim, which was the sole remaining issue in plaintiff's action.

On June 30, 2014, the trial court filed its judgment in favor of Cal Fire.

On July 9, 2014, the trial court issued an amended ruling on the equitable easement claim after plaintiff filed a request to correct and augment the ruling.

On August 28, 2014, plaintiff filed a notice of appeal from the judgment (case No. A142886).

### III.    *Petition for Writ of Mandate*

On April 12, 2012, Ken Pimlott, the current Director of Cal Fire, authored a letter denying plaintiff's renewed request for a permanent easement. The letter confirmed Cal Fire would continue to allow full access to the property from the access road. At some point, Cal Fire offered to enter into a use agreement with plaintiff for the route. This offer was limited to plaintiff, and would not apply to any successor-in-interest.

5

On September 17, 2012, plaintiff filed a petition for writ of mandate against Pimlott and Cal Fire. Plaintiff acknowledged that after the court ruled against her mandamus action on January 31, 2012, she had renewed her request for an easement with the agency.

On December 17, 2013, the trial court issued its order denying the petition for writ of mandate. The court concluded relief was not available under Code of Civil Procedure section 1085 and, even if it was available, plaintiff had not shown any abuse of discretion.

On January 29, 2014, the trial court filed its judgment in favor of Cal Fire.

On March 26, 2014, plaintiff filed a notice of appeal from the judgment (case No. A141475). We consolidated the two appeals.

## DISCUSSION

### I.    *Standards of Review*

"In appropriate cases in which the requirements for traditional easements are not present, California courts have exercised their equity powers to fashion protective interests in land belonging to another, sometimes referring to such an interest as an 'equitable easement.' " (*Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1008 (*Tashakori*).) Plaintiff's first obstacle is the deferential and limited scope of appellate review. "When reviewing a trial court's exercise of its equity powers to fashion an equitable easement, we will overturn the decision only if we find that the court abused its discretion."[5] (*Ibid.*)

The standard of review used in an ordinary writ case is also abuse of discretion. " ' "Courts exercise limited review in ordinary mandamus proceedings. They may not reweigh the evidence or substitute their judgment for that of the agency. They uphold an

_____

[5] Plaintiff claims the standard of review is de novo because the trial court allegedly "erred significantly in how it addressed the applicable law." She appears to base this contention on the trial court's reliance on Civil Code section 1007, which prohibits prescriptive easements on public land. As will become apparent in our discussion below, even if the court erred in its interpretation of that statute, the error is harmless. Accordingly, we apply the abuse of discretion standard per *Tashakori, supra*, 196 Cal.App.4th 1003.

6

agency action unless it is arbitrary, capricious, lacking in evidentiary support, or was made without due regard for the petitioner's rights. [Citations.] However, courts must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute. [Citation.] Because trial and appellate courts perform the same function in mandamus actions, an appellate court reviews the agency's action de novo." ' [Citation.] When the trial court resolves conflicting evidence in ruling on a traditional writ of mandate, we inquire whether the findings and judgment of the court are supported by substantial evidence. [Citation.] When the court resolved questions of law and applied the law to undisputed facts, our review is de novo." (*Westchester Secondary Charter School v. Los Angeles Unified School Dist.* (2015) 237 Cal.App.4th 1226, 1235–1236.)

## II.    *Equitable Easement*

"In appropriate cases in which the requirements for traditional easements are not present, California courts have exercised their equity powers to fashion protective interests in land belonging to another, sometimes referring to such an interest as an 'equitable easement.' " (*Tashakori, supra,* 196 Cal.App.4th at p. 1008.) To justify the creation of an equitable easement, three factors must be present: First, the easement seeker must use and improve property innocently—" '[t]hat is, his or her encroachment must not be willful or negligent.' " (*Id.* at p. 1009.) A court " 'should consider the parties' conduct to determine who is responsible for the dispute.' " (*Ibid.*) Second, the easement opponent will not suffer irreparable harm by its creation. Third, the hardship of denying the easement " ' "must be greatly disproportionate to the hardship" ' " of allowing it. (*Ibid.*)

In *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259 (*Linthicum*), equitable easement principles were applied defensively. In that case, the plaintiffs' neighbors had used a roadway over the plaintiffs' land for many years, believing they had an easement from the United States Forest Service. (*Linthicum,* at pp. 263–264.) The plaintiffs bought the parcel and sought to enjoin the neighbors' use of the road that provided the

7

sole access to their properties.  (*Id.* at p. 262.)  No alternative access could be constructed.  (*Id.* at p. 265.)

The trial court found that the plaintiffs purchased the parcel with full knowledge of the historical use of the roadway and nevertheless sought to deprive their neighbors of the value and use of their properties.  (*Linthicum, supra,* 175 Cal.App.4th at p. 266.)  The court also found that the roadway did not substantially interfere with the plaintiffs' right to use and develop their property, yet the neighbors would suffer a catastrophic loss if denied access to their properties.  (*Ibid.*)  The Court of Appeal affirmed, finding the lower court "acted well within its discretion in denying the injunction."  (*Id.* at p. 267.)

The equities were just as apparent and imbalanced in *Tashakori*, *supra*, 196 Cal.App.4th 1003.  In *Tashakori,* as in the instant case, the trial court was asked to exercise its inherent equitable power to fashion an equitable easement rather than to enjoin an encroachment as in *Linthicum*, *supra*, 175 Cal.App.4th 259.  "[T]he courts are not limited to judicial passivity as in merely refusing to enjoin an encroachment.  Instead, in a proper case, the courts may exercise their equity powers to affirmatively fashion an interest in the owner's land which will protect the encroacher's use."  (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 765.)

In *Tashakori,* as in *Linthicum,* one of the parties was innocent.  The Tashakoris bought adjoining parcels "with the innocent belief that an easement to the public road existed."  (*Tashakori, supra,* 196 Cal.App.4th at p. 1010.)  Both parcels shared a common driveway.  They later sold one of the parcels, which, unbeknownst to them, left their remaining lot landlocked.  (*Id.* at p. 1005.)  The trial court found that the owners of the other parcel would "suffer virtually no harm at all from the Tashakoris' use of the shared driveway to access Lot 18, and that the Tashakoris would be irreparably harmed if their sole means of accessing their property were denied."  (*Id.* at p. 1010.)  The court granted an equitable easement over the common driveway, and the Court of Appeal affirmed. (*Id.* at pp. 1005–1006.)

In the present case, the trial court found plaintiff had failed to prove any of the three factors required to justify her claim for an equitable easement.  "Unless all three

prerequisites are established, a court lacks the discretion to grant an equitable easement." (*Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19 (*Shoen*).) As to the first factor, the trial court found the Whites did not have "a good faith belief, based on a diligent investigation, that they had unfettered rights to use the roadway." Specifically, there was no evidence that anyone in the chain of title to plaintiff's parcel had ever been misled as to the absence of a right of access. Importantly, Robert testified at trial that he knew the parcel had no recorded access at the time he examined the deed, and acknowledged that he had likely discussed this point with his brother William, plaintiff's husband. The court imputed William's knowledge to plaintiff, and she does not challenge this aspect of the court's ruling on appeal. The instant case is thus distinguishable from *Tashakori, supra,* 196 Cal.App.4th at page 1006, in which the easement seekers were reasonably misled into believing they already had a recorded easement for use of a neighbor's driveway. Accordingly, that case does not undercut the trial court's findings here.

While plaintiff's failure to surmount this first hurdle is dispositive, we also conclude the trial court's findings as to the relative hardships to the parties are supported by substantial evidence. The comparison of relative hardship analysis begins "tipped in favor of the property owner [Cal Fire] due to the owner's substantial interest in *exclusive* use of [its] property arising solely from [its] ownership of [its] land." (*Shoen, supra,* at p. 19.) Indeed "courts approach the issue of equitable easements with '[a]n abundance of caution' [citation] and resolve all doubts against their issuance." (*Id.* at p. 21, and cases cited.) It is undisputed that without an easement, plaintiff can still access her property, as she and her predecessors have done for decades, because Cal Fire has already agreed to allow her to use the access road for as long as she owns the parcel. (Compare *Tashakori, supra,* 196 Cal.App.4th at p. 1007 [without an easement " 'Lot 18 would be inaccessible,' " unduly harming the easement seeker]; see also *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 303, 307 [if the plaintiffs were denied the right to continue the use of the defendants' property they would have access to their property only by "extreme hardship"].) While without an easement plaintiff may be in a less advantageous position in terms of refinancing or selling her property, she is in no worse position than when her

9

deceased husband and his brother bought the property, as they purchased it with full knowledge that there was no recorded easement for access. Moreover, Cal Fire had offered to grant them an easement in the past but its offer was refused.

As to whether Cal Fire would suffer irreparable harm, the trial court could reasonably find the agency needed to maintain complete control over the access road in order to guard against illegal dumping and other harmful activities. It is undisputed that many problems had occurred, and that these problems were attributable to unauthorized use of the access road. While plaintiff suggests these activities are not presently occurring, the court was entitled to take the access road's history into account. We also note that even doubtful cases should be decided in favor of the landowner and not the encroacher. (*Linthicum, supra,* 175 Cal.App.4th at pp. 265–266.) In quarreling with the trial court's findings, plaintiff is in reality asking us "to reweigh the evidence and substitute our discretion for that of the trial court. . . . [T]hese are not legitimate functions of the Court of Appeal." (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 897.) In sum, plaintiff has failed to demonstrate either that the trial court's underlying findings are not supported by substantial evidence, or that the court abused its discretion in refusing to award her an equitable easement.

### III.    *Writ of Mandate*

In her companion appeal of the denial of her separately filed petition for writ of mandate, plaintiff asserts Pimlott abused his discretion in refusing to afford her a hearing and in refusing to grant her request for an easement. Cal Fire counters that the trial court was correct in concluding relief by way of petition for writ of mandate pursuant to Code of Civil Procedure section 1085 was not available because neither Pimlott nor Cal Fire are under any legal duty to grant permanent easements to any private landowner. Alternatively, Cal Fire contends the decision to refuse plaintiff's easement request did not constitute an abuse of discretion.

"It is generally recognized that traditional mandamus under [Code of Civil Procedure] section 1085 applies to '[q]uasi-legislative' decisions, defined as those involving ' "the formulation of a rule to be applied to all future cases," ' while

10

administrative mandamus under [Code of Civil Procedure] section 1094.5 applies to 'quasi-judicial' decisions, which involve ' "the actual application of such a rule to a specific set of existing facts." ' " (*Southern California Cement Masons Joint Apprenticeship Committee v. California Apprenticeship Council* (2013) 213 Cal.App.4th 1531, 1541.) The decision to approve a private property owner's easement request, based as it is on the application of Policy 0351.8 to the particular circumstances of request, is far more adjudicatory than legislative in nature, placing it in the natural domain of Code of Civil Procedure section 1094.5. Yet because Cal Fire is not required to hold a hearing before denying approval of such an easement request, its decisions do not fall within the literal language of that section, which applies only to decisions rendered "as the result of a proceeding in which by law a hearing is required to be given[ and] evidence is required to be taken." (Code Civ. Proc., § 1094.5, subd. (a).) As a result, it is not readily apparent which statute should apply.

We need not further address this issue, however, because even if traditional mandamus is appropriate, we disagree with plaintiff's contention that Pimlott abused his discretion in denying her easement request. We first note that "[u]nlike the broad scope of review provided in administrative mandamus proceedings, review by ordinary mandamus is confined to an examination of the agency proceedings to determine whether the action taken is arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to conform to procedures required by law." (*Stauffer Chemical Co. v. Air Resources Board* (1982) 128 Cal.App.3d 789, 794.)[6]

We have already concluded the trial court did not abuse its discretion in finding plaintiff was not entitled to an equitable easement to the access road. We also observe plaintiff has not appealed from the court's ruling against her petition for writ of mandate contained in her second amended complaint. Therefore, to the extent plaintiff's claims of error are based on matters that Walters considered in 2010, we deem those claims to be

---

[6] We note plaintiff does not contend that she sought to proceed under administrative mandamus.

11

waived. With these considerations in mind, we see nothing in the record to indicate that Pimlott abused his discretion in denying her request for the same easement.

Policy 0351.8 notes that private party easements on forest land are "sometimes necessary to allow adjacent owners access, use and development of their property." It clearly states that while requests for such easements are "discouraged," they "*may* be considered when no other routing through non-State forest land is physically possible or if such other routing presents substantial and unreasonable difficulties or environmental damage." (Italics added.) By its terms, the policy *never requires* Cal Fire to grant such easement requests. Even when a private party lacks alternative access to their property, the decision to grant an easement under Policy 0351.8 is entirely within Cal Fire's discretion. Nor does anything in the policy require Cal Fire to afford the applicant an evidentiary hearing.

The administrative record here contains a transcript of an October 7, 2008 Board of Forestry and Fire Protection Management Committee meeting, in which the following interpretation of Policy 0351.8 is stated as to the feasibility of alternate access: "[W]e interpret that to mean that the bar is set pretty high. In other words[,] it's not enough to simply go to the . . . other possible adjacent [landowners] and ask them and when they say no way then you go to Jackson State because it's more expedient. It takes more than that . . . ." At this same meeting, during which a different landowner's request for an easement was being considered (and ultimately rejected),[7] the problems described previously concerning trash dumping caused by unlocked gates on plaintiff's property were noted.

An engineering report prepared on November 7, 2011, and submitted by plaintiff to Cal Fire in support of her request, does not categorically rule out the possibility of an alternate access route, though it notes the proposed alternative that it examined would be difficult to construct and would entail a risk to the watershed from landslides or sediment

---

[7] We grant Cal Fire's request to take judicial notice of the letter dated October 6, 2009, denying a request by Diana Windlinx for an easement for permanent access to her property. (See Evid. Code, § 452, subd (c).)

12

due to stream crossings that would have to be built. The report concludes that the existing access road presents far less maintenance and far less potential for detrimental impacts to the surrounding natural resources. Even if this conclusion is accurate, it does not compel us to find an abuse of discretion.[8]

Plaintiff claims Cal Fire abused its discretion by (1) denying her the same level of administrative review as the party whose request was discussed at the October 7, 2008 hearing, (2) failing to specify what documents or evidence it would need to grant an easement, (3) generating its own documents for Pimlott's review without allowing her to respond to any inaccuracies contained therein, (4) not allowing her an opportunity to cure any deficiencies in her evidence, (5) failing to explain or distinguish the eight known occasions in which Cal Fire did grant access easements to other private landowners, (6) erroneously maintaining that there were viable alternative access routes, (7) failing to consider the environmental damage that would be caused by constructing a new road, and (8) altering its policies without notice or approval from the Office of Administrative Law.

As plaintiff does not cite to any rule requiring Cal Fire to grant her an evidentiary hearing, we cannot say the failure to accord her a hearing amounts to an abuse of discretion.[9] As to the assertions that Pimlott failed to consider the potential environmental impacts of the proposed alternative new road, plaintiff does not explain

---

[8] It is also unclear from the record if the route evaluated by plaintiff's consultant is the only available alternative. In his original denial letter, Walters noted "several possible alternative access routes" that "did not seem to have been pursued to conclusion," as well as an "air photo" that "shows roads from structures on the subject property going out to the west and connecting with Mitchell Creek Road."

[9] Plaintiff maintains that Pimlot failed to adhere to a Cal Fire policy that includes "nine procedural and substantive guidelines," and she complains that Cal Fire started "reconfiguring and reinterpreting the [policy], not unlike a situation where an agency prepares an illegal 'underground regulation' without proper public notice of official approval." At oral argument, plaintiff's counsel clarified that plaintiff's specific complaint is that Cal Fire wrongly changed its approach by using the guidelines to deny, rather than to grant, easements. To the extent plaintiff is contending on appeal that this alleged change of approach constitutes an underground regulation, we decline to address it because the argument was not made below.

13

how she knows he failed to consider this aspect of her consultant's report. With respect to Pimlott's failure to explain or clarify what documents and evidence he would need in order to grant an easement, she does not set forth the law or regulation that placed him under such a duty to disclose. Nor does it appear he had an affirmative duty to distinguish the present case from the cases in which Cal Fire had granted easement requests in the past.[10]

Plaintiff's other arguments are premised on her belief that Pimlott "mistakenly" denied her request, when it appears he was under no duty to grant it in the first instance. We also note that while she did bring substantive and procedural due process claims in her first amended complaint with respect to Walter's denial of her easement request, the trial court dismissed those claims after granting Cal Fire's demurrer. In her opening brief plaintiff does not assert the court's ruling was in error. In sum, we cannot say plaintiff has met her burden to show that Pimlott abused his discretion in refusing to grant her easement request.

We also disagree with her assertion that the trial court abused its discretion in refusing to allow her to augment the administrative record with information relating to the eight prior easements granted by Cal Fire. These easements did not concern her property and were not contemporaneous to her request, the most recent easement having been granted in 1997. The court could reasonably have concluded the proffered evidence was not relevant to Pimlott's decision.

## DISPOSITION

The judgments are affirmed.

---

[10] Of the eight easements Cal Fire had granted, all but one were granted prior to 1980.

_____
DONDERO, J.

We concur:


_____
HUMES, P.J.


_____
MARGULIES, J.

A141475/A142886