Filed 2/15/23  Ma v. Mt Son CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JAWON MA, | B320965 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. |
| v. | No. 19STCV32106) |
| MT SON, LLC, | |
| Defendant and Appellant. | |

_____

APPEAL from the judgment and order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge. Affirmed.

Timothy D. McGonigle for Appellant.

Kim, Shapiro, Park & Lee, John P. Lee and Paul Park for Respondent.

_____

Mt Son, LLC, appeals from a judgment entered after a bench trial in favor of Jawon Ma, in which the trial court granted an equitable easement over Mt Son's property for the benefit of

Ma's adjacent property. Mt Son contends the court erred in granting the easement—which allows Ma to use Mt Son's driveway to access her backyard for trash removal, gardening, and maintenance—because the evidence at trial did not support a finding in favor of Ma on each of the required elements for an equitable easement. Mt Son also argues the court erred in denying its motions to correct the statement of decision and for a new trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Properties[1]*

Ma is the owner of real property located at 1245-1247 East Colorado Street in Glendale (Ma property). She inherited the property from her parents, who acquired it around 1980. The rectangular lot is approximately 50 feet wide along the street and 120 feet deep. A single building occupies the full width of the property and is divided into two commercial units used by tenants for retail shops and restaurants. At the back of the property is an undeveloped yard (backyard) on which is a storage shed and tenants' trash bins. There is no access to the backyard over Ma's property except through the building and up a flight of stairs leading to the back of the building.[2]

---

[1]    Our description of the properties is based on the undisputed facts set forth in the parties' trial briefs, and the photographs, diagrams, and property records admitted at trial.

[2]    It appears from the record that the backyard is higher than the street, so it can only be accessed by walking up a flight of stairs.

Mt Son owns the neighboring property on the east side of the Ma property at 1301-1303 East Colorado Street (Mt Son property). Mt Son acquired the property in August 2018. The lot is approximately 50 feet wide and 190 feet deep. The property contains a small commercial building on the street and three residential buildings at the rear of the lot. A paved driveway approximately 10 feet wide runs along the western perimeter of the property—adjacent to the Ma property—which provides access to the three residential buildings.

In 1971 Mabel Rauch, then-owner of the Ma property, and Vladamir Vly, then-owner of the Mt Son property, recorded an easement agreement granting Rauch drainage access for water flowing from the rear of the Ma property over the Mt Son driveway. In exchange, Rauch granted an easement to Vly for him and his tenants to use Raush's backyard for private parking. The agreement provided each of the easements would terminate upon the death of the owner or sale of the property. It is undisputed the easement agreement expired long ago.[3]

B.   *The First Amended Complaint*

Ma filed this action against Mt Son on September 10, 2019.[4] The operative first amended complaint (complaint)

---

[3]    Ma stated in her trial brief "the previously recorded easement dated November 15, 1971 expired over 20 years ago," and Mt Son's trial brief asserted the easement agreement "has long since terminated" because the parties to the agreement "have long since passed away."

[4]    The complaint was filed by Jawon Ma and Sang-Cheul Kong as trustees of The Kong Family Trust dated July 7, 1986. By the time of trial, Ma's parents had died and the Ma property

3

asserted causes of action for quiet title, easement by estoppel, easement by necessity, easement by prescription, trespass, permanent injunction, and declaratory relief. The complaint alleged that due to the layout of the parties' properties, access over the Mt Son driveway provided the only viable access to Ma's backyard from the public street, and an easement had been in continuous use from 1980 until 2018, when Mt Son blocked Ma's access. Shortly after purchasing the Mt Son property in 2018, Mt Son erected a wooden fence between the two properties. Mt Son removed the fence a few months later and planted trees along the property line that likewise blocked Ma's access to the Mt Son driveway. Ma alleged further the trees were planted within her property line, constituting a trespass.

The second cause of action was styled as a cause of action for easement by estoppel, but it alleged the elements for an equitable easement. Ma alleged "the [e]asement in question has been in use for over a period of five years. [Ma has] been utilizing the [e]asement or right of way continuously with an innocent belief that [Ma] had a right to do so. Without provision for ingress and egress, there is no physical or economical viable access for necessary utility services, fire protection and emergency services, and quiet enjoyment of the [d]ominant [t]enement, which would cause irreparable harm. The [e]asement would not burden [Mt Son] greatly, or at all."

The complaint prayed for the granting of an easement over the Mt Son driveway and/or declaratory and injunctive relief recognizing Ma's legal right to use the driveway, an injunction

---

had been passed to Ma. As a result, the trial court granted Ma's request to amend the complaint to substitute herself as the plaintiff in her individual capacity.

4

ordering Mt Son to remove any obstructions that interfere with Ma's use of her property or the driveway, and economic and special damages caused by Mt Son's interference with Ma's use of the driveway.

C.    *The Evidence at Trial*

A bench trial was held on December 13 and December 14, 2021.  Ma testified and called as witnesses Hisajazu Ota (her gardener), Armik Mikailian (her former property manager), and Kevin Yoon Lai (a surveyor as an expert witness on the property line).  Mt Son called as witnesses Mkrtich (Mike) Tamrazyan (Mt Son's principal member and owner), Daniel Svetich (owner prior to Tamrazyan), and Gary Davis (longtime tenant on the Mt Son property).

1.    *Ma's evidence*

Ma testified that from the time her parents acquired the property in 1980, the only access to the backyard from the street was over the Mt Son property on the east side.  To the west of the Ma property is the parking lot of an automotive parts store, with a masonry wall separating the properties.  In the rear of the property is a brick wall between Ma's property and the neighbor's property to the north.  There is no alley, pathway, or rear access.

In 1983 or 1984 Ma's parents installed a metal fence between Ma's backyard and the Mt Son property after receiving complaints from the owner of the Mt Son property that one of Ma's tenants was using the Mt Son driveway to park a vehicle in Ma's backyard.  The fence remained at the time of trial.  It had a pedestrian gate opening to the Mt Son driveway to enable use by Ma's tenants of the Mt Son driveway to move trash, receive deliveries, or for other purposes.  Prior to October 2018, Ma's

5

tenants used the gate and the Mt Son driveway to take their trash bins out to Colorado Street once per week for trash pickup (or twice per week in the case of restaurant tenants). Ma's gardeners also used the driveway "a few times a year" to drop off equipment and remove yard debris, and construction and maintenance workers occasionally used the driveway to deliver supplies to the Ma property.

Ma was aware the Mt Son property changed ownership in 2018, and in October 2018 Mt Son as the new owner, without notifying Ma, installed a wooden fence immediately in front of her gate, blocking access to the Mt Son driveway. Around January 2019, without notice, the wooden fence was removed and replaced with a row of trees that similarly blocked Ma's gate and her access to the Mt Son driveway.[5]

Ma described her tenants' use of the Mt Son driveway. A pawn shop had been a tenant since 1992 and used the gate and driveway. Ma could not recall if the upholstery store that was a tenant starting in 1984 used the gate to access the driveway. But Ma observed a shoe store that leased the property after the upholstery store use the gate once a week to move boxes in and out of the back area. In addition, a gift shop that was a tenant for five to seven years used the gate. Ma explained the tenants would bring their trash bins through the gate and down the driveway to the street. The city trash trucks did not use the driveway to pick up the tenants' trash. The court then inquired, "The driveway is not necessary for the trash people to drive up and pick it up?" Ma responded, "No."

---

[5]     Photographs admitted at trial show a row of bushy trees planted in a hedgerow along the property line in front of the metal fence and gate.

6

Mikailian testified he began managing the Ma property around 2015 because the Ma family was living in another state. Around October 2018 Mikailian observed that Mt Son had erected a wooden fence in front of the Ma gate. Mikailian approached a person he believed to be the owner of the Mt Son property and complained that the fence blocked access for trash removal.[6] Mt Son removed the fence "fairly quickly" but then planted the trees blocking the gate.

Mikailian received complaints from Ma's tenants, most significantly from Matias Restaurant. The restaurant had signed a three-year lease in October 2018 and opened shortly before the gate was blocked. The restaurant representatives complained they were unable to move their trash bins from the backyard to the street. In December 2019 Matias terminated its lease with two years remaining and withheld rent due to Ma's asserted failure to maintain the premises. The termination notice admitted at trial stated Ma breached the lease agreement because she "allowed the construction of a barrier that was not there when [the restaurant] signed the lease agreement. This barrier is interfering with [restaurant] business and is impeding on its employees' access to the common areas, including the dumpsters in the back of the facilities. [¶] As a result, . . . employees are forced to walk the trash through the restaurant on a daily basis in front of customers. Aside from being extremely unsightly, this creates a serious health hazard . . . . [¶] Additionally, the barrier is blocking the gardener's access. As a result, the gardener is forced to walk through the restaurant and up a flight of stairs, with all of his equipment. . . . This is a direct violation of . . . the lease agreement because it impedes with . . .

_____

[6]     Tamrazyan denied Mikailian ever spoke with him.

use and access to the common areas. Again, you can see how this type of unsanitary conduct creates a hazardous risk for patrons of the restaurant." The restaurant space was vacant for at least six months after termination by Matias, which had been paying about $3,000 in monthly rent. The current tenant is a karate studio, but the restaurant fixtures remain unused on the site.

Ota testified he provided gardening services at the Ma property since the early-to-mid 1980s. He typically visited the property four to six times a year to clear weeds and leaves. Prior to the time Mt Son planted the trees, Ota would use his vehicle on the Mt Son driveway to unload equipment and pick up waste. No one ever told him not to use the driveway. Since Mt Son blocked the driveway, Ota's crew had been parking in the automotive store parking lot on the other side of the Ma property, and his workers "backed the truck [on the] other side of the property, and . . . jump[ed] over the wall and toss[ed] the trash to the truck." Ota changed the schedule "because it's a hassle to go there."

Lai, the surveyor, opined the center of the trunks of the trees planted by Mt Son were on the Ma property, approximately three inches from the Mt Son property line.

### 2.    *Mt Son's evidence*

Tamrayzan owns Mt Son and was personally involved in purchasing the property. Tamrayzan testified that before the purchase, he noticed a reference to a 1971 drainage easement in the title report, investigated the matter, and determined the easement "didn't affect the property" because the parties to the agreement had died. Part of the reason he purchased the property was because he understood there was no easement. However, on cross-examination Tamrayzan admitted the seller

8

(Svetich) told him the "other side" was using the driveway. Tamrayzan stated he initially erected the wooden fence after buying the property because he was considering installing a daycare and wanted to prevent people on the Ma property from seeing the children, but he took the fence down because it was ugly and he decided not to go forward with the daycare. He then planted trees to make the property look nicer, although he admitted he also planted the trees to block Ma's gate.

Tamrazyan stated in describing the impact of Ma's use of the driveway that his primary concern was liability if one of Ma's tenants or the gardener tripped and fell on the driveway, or one of them was hit by a vehicle. The court inquired, "So there's nothing about the movement of the trash cans that cause you any convenience or concern, except for the liability aspect, that someone could get hurt, trip and fall; correct?" Tamrazyan answered, "Correct." With respect to tenant complaints, Tamrayzyan stated, "I'll leave that to them to say." Tamrazyan also opposed an easement over his property because he might in the future decide to proceed with his plan to install a daycare, and the property might not be code compliant if he could not block off the driveway.

Svetich testified his father purchased the Mt Son property in the late 1970s. Svetich owned the property from 1994 until 2018 and lived there from 2000 to 2010. During that time he observed the tenant businesses on the Ma property carry their trash out through the front door of the building because each of the tenants had only one bin. After a restaurant leased space on the Ma property, one of the Mt Son tenants complained the restaurant owner parked in the tenant's spot on the Mt Son property during lunch, and Svetich posted a sign that parking was prohibited. Svetich testified he did not want the fence to be

9

removed because it would cause the Ma property tenants to use the driveway to access parking in the rear of the Ma property. Svetich added that he believed the businesses on the Ma property failed because of lack of parking, not problems with moving their trash.

When he sold the property to Mt Son, Svetich did not disclose an unrecorded easement favoring the Ma property because "there were no claims. There [were] never any issues about the gate being there or the gate." In response to questioning by the court, Svetich explained Tamrazyan already owned commercial and residential property on the same block, and Svetich understood Tamrazyan already had access to the property and could see what was taking place. He testified, "Mike [Tamrazyan] knew that [the restaurants] used the gate for trash. . . ." Asked by the court how Mt Son knew this, Svetich responded, "because they saw what was happening, and they saw the gate. They knew it was there. They knew it wasn't there . . . for show. And the trash barrels were lined up . . . inside the vacant lot."

Davis testified he lived in one of the residential units on the Mt Son property for at least 25 years, 10 of them in retirement. He had a good view of the driveway from his unit. The only people Davis ever saw access the Mt Son driveway from the Ma property were employees of a restaurant that operated for about a year in 2017. The restaurant employees used the driveway to remove trash and blocked the driveway with a pickup truck "a couple of times" to drop off propane and supplies. Davis complained to Svetich and to the restaurant operator, but the restaurant closed down shortly thereafter. Davis testified "nobody else used that driveway to take their trash down," and to his knowledge, the Ma gardeners did not use the driveway.

10

D.    *The Order and Judgment*

Following the presentation of evidence, the trial court instructed the parties to file closing briefs in lieu of argument. The court advised counsel the trial was under eight hours and the court would not issue a written statement of decision. The court clarified it might write an "informal" decision, but the matter would be deemed submitted after Ma filed her rebuttal trial brief, or if she did not file a rebuttal brief, on January 7, 2022. Neither party requested a statement of decision.

In its closing brief, Mt Son "admit[ed] [Ma] acquired a limited non-exclusive use easement over [Mt Son's] property." (Capitalization omitted.) However, Mt Son stated the easement was by prescription: "[I]t does appear that for at least 5 years that one or more tenants of [Ma's] property took their trash out the back door, across the rear yard, across a portion of [the Mt Son property] and pushed or pulled a trash barrel up and/or down the driveway to the curb for the City trash truck to pick up the trash on Tuesdays and possibly Thursday. . . . That evidence may have been weak, . . . [but] [Mt Son] will nevertheless admit to this fact mainly because the alleged use apparently occurred decades ago and [Mt Son] is unable to refute [Ma's] limited non-exclusive use of an asphalt driveway about 10 feet in width, approximately 45 feet in length, limited to trash hauling by foot traffic, no more than two days a week, . . . moving trash cans up and down the driveway, for a few minutes in each direction." Mt Son also admitted the trees it planted encroached on the Ma property. Mt Son proposed the trial court grant a prescriptive easement allowing Ma to use the driveway for biweekly movement of the trash bins, that Ma indemnify Mt Son for use of the easement, and that Mt Son would pay $2,000 to remove the encroaching trees.

11

On January 12, 2022 the trial court issued an Informal Statement of Decision. As stated in the order, because the trial time consumed fewer than eight hours and no party requested a formal statement of decision under Code of Civil Procedure section 632,[7] the court did not issue a statement of decision, and the informal decision was the final order of the court. The court made findings Ma and her tenants utilized the Mt Son driveway without paying compensation since at least the mid-1980s to move trash bins to the street, for temporary parking, and for access for gardeners, construction, and maintenance personnel. The court found these uses were initially allowed under an express easement executed by the former owners of the properties, but it was undisputed the express easement had expired.

The trial court found Ma failed to meet her burden of proof for entitlement to an easement by necessity because "[t]he simple fact is that [Ma] can utilize other reasonable means to dispose of any trash. It is certainly *more convenient* for [Ma] to utilize the driveway for such a task, but it is not 'necessary,' as a matter of law. The same is true with the gardening." Ma also failed to meet her burden of proof for entitlement to a prescriptive

---

[7] Section 632 provides in part, "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision." All further statutory references are to the Code of Civil Procedure.

easement because "there was no 'hostile' intent by [Ma] (nor by her tenants, etc), for the many years they actually utilized the driveway prior to [Mt Son] purchasing it." Ma's use was with the "clear consent (or perhaps 'non-objection') of the then-owner of the subject driveway property."

However, Ma met her burden to demonstrate an equitable easement: "Given the totality of the circumstances it is fair and equitable that [Ma] be allowed to utilize the driveway at issue for the purposes it has actually been utilized for many previous decades. There is no 'undue' prejudice against [Mt Son] for such a reasonable and limited use under the applicable 'relative hardship' test." The court also found Ma had shown Mt Son trespassed on her property by planting the trees, but the trespass was de minimis, and Ma failed to prove any entitlement to damages on any theory against Mt Son.

The court issued an injunction requiring Mt Son to remove the trees blocking access to Ma's gate and to allow reasonable access over the driveway "in a manner which was consistent with the previous use, e.g., trash can access to and from the [Ma property] to the street, as reasonably needed, as well as reasonable access for any gardener and or maintenance workers to the back yard." Ma's use of the driveway would be without compensation to Mt Son and would last for 25 years from the date of the order. Ma was ordered to indemnify and hold Mt Son harmless from any damages Mt Son might incur as a result of use by Ma or her tenants and agents of the driveway.

On January 31, 2022 the trial court entered a judgment incorporating by reference the findings of the January 12 order and expressly restating the terms of the order.

13

E.    *Mt Son's Posttrial Motions*

On January 27, 2022, shortly before entry of the judgment, Mt Son (represented by new counsel) filed a motion to correct the statement of decision (§ 634), for a new trial (§ 657), or to reopen the evidence (§ 662) (motion to correct).  Mt Son argued the January 12 order was a defective statement of decision because Ma failed to prove, and the trial court failed to make sufficient findings, as to the three required elements for an award of an equitable easement.  In the alternative, the court should order a new trial or allow presentation of additional evidence.  Mt Son also argued it never authorized its former attorney to file a closing brief in which it agreed Ma was entitled to a prescriptive easement to use the driveway.

On February 7, 2022 Mt Son filed a notice of intent to move for a new trial (§§ 657 & 659) and to vacate the judgment (§ 663) (new trial motion), acknowledging the previous motion had been "partially mooted by the subsequent entry of judgment."  In its motion and supporting memorandum, Mt Son again argued Ma failed to prove and the trial court failed adequately to address the three elements required to establish an equitable easement.

After a hearing, on April 5, 2022 the trial court denied Mt Son's motions.[8]  The court found no formal statement of decision was required, requested, or issued, and Mt Son was therefore not entitled to modification of the order (for lack of sufficient findings).  With respect to the new trial motion, the court ruled "any legal arguments now being proffered by [Mt Son] [have] been waived by its failure to make such legal arguments at

_____

[8]    The trial court's April 5, 2022 minute order refers only to the January 27, 2022 motion to correct, not the new trial motion.  However, the court's order substantively addressed both motions.

14

the time of trial.  Neither [Mt Son's] Trial Brief, nor [its] Closing Brief, even mentioned or even discussed the issue" of an equitable easement.  Even if Mt Son had not waived the issue, the court would have reached the same conclusion because its "informal findings make all of the necessary findings for that specific requested relief, or the required findings may be reasonably implied."  Moreover, to the extent the required findings for an equitable easement were not implied, the court could now "reasonably make such findings based upon the evidence at the trial."  The court found "little, if any, of the equitable factors in favor of [Mt Son]," but "[t]he overwhelming equities for the awarded relief [were] in favor of [Ma]."  Moreover, the reasons Mt. Son gave "for its actions and its need to block access (e.g., to build a pre-school) or for its 'prejudice' [were] not credible."

Mt Son timely appealed from the judgment and the April 5, 2022 order.

## DISCUSSION

A.    *Governing Law and Standard of Review*

"In appropriate cases in which the requirements for traditional easements are not present, California courts have exercised their equity powers to fashion protective interests in land belonging to another, sometimes referring to such an interest as an 'equitable easement.'"  (*Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1008 (*Tashakori*); accord, *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 765 (*Hirshfield*) ["in a proper case, the courts may exercise their equity powers to affirmatively fashion an interest in the owner's land which will

15

protect the encroacher's use"]; see *Romero v. Shih* (2022) 78 Cal.App.5th 326, 355 (*Romero*) [same].)

Three elements must be present to justify creation of an equitable easement.  First, the party requesting the easement must use the property innocently, "'[t]hat is, his or her encroachment must not be willful or negligent.'"  (*Tashakori, supra*, 196 Cal.App.4th at p. 1009.)  Second, the party opposing the easement must not suffer irreparable harm by the creation of the easement.  (*Ibid*.)  Third, the hardship of denying the easement ""'"must be greatly disproportionate to the hardship"'"" of allowing the easement.  (*Ibid*.; accord, *Hirshfield, supra*, 91 Cal.App.4th at p. 759.)

"Unless all three elements are established, a court lacks discretion to grant an equitable easement."  (*Romero, supra*, 78 Cal.App.5th at p. 356; accord, *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 184 [trial court abused its discretion by failing to consider whether plaintiff's conduct was innocent where evidence showed plaintiff did not establish innocent use]; *Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 21 [plaintiff must establish all three elements and cannot pursue "a more open-ended and free-floating inquiry into which party will make better use of the encroached-upon land, which values it more, and which will derive a greater benefit from its use"].)

We review a trial court's decision to grant an equitable easement for an abuse of discretion.  (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal. App.5th 982, 1005-1006; accord, *Tashakori, supra*, 196 Cal.App.4th at p. 1008 ["When reviewing a trial court's exercise of its equity powers to fashion an equitable easement, we will overturn the decision only if we find that the court abused its discretion."]; *Hirshfield, supra*, 91 Cal.App.4th at p. 771.)  This standard "includes a substantial evidence

component: 'We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion. If there is no evidence to support the court's findings, then an abuse of discretion has occurred.'" (*Nellie Gail Ranch Owners*, at p. 1006.) If "substantial evidence supports the trial court's expressed and implied factual findings . . . our analysis ends; we may not substitute our deductions for those of the trial court." (*Ibid.*)

B.     *Substantial Evidence Supports the Trial Court's Grant of an Equitable Easement*

Mt Son contends no evidence was presented at trial to establish the first and third required elements for granting an equitable easement.[9] Substantial evidence supports the trial court's findings on these elements.

1.     *Innocent intent*

With respect to the first element, "the encroaching party's innocent intent is 'paramount'—if the encroaching party is 'willful, deliberate, or even negligent in his or her trespass, the court will enjoin the encroachment.'" (*Romero, supra*, 78 Cal.App.5th at p. 357; accord, *Hirshfield, supra*, 91 Cal.App.4th at p. 769.) As the Supreme Court has explained, "[t]o be willful the [encroaching party] must not only know that he is [traveling] on the [property owner's] land, but act without a

---

[9]     Mt Son concedes in its reply brief the evidence does not show Mt Son would suffer irreparable harm from the imposition of the easement, and the trial court therefore did not abuse its discretion in finding the second element was satisfied.

17

good faith belief that he has a right to do so." (*Brown Derby Hollywood Corp. v. Hatton* (1964) 61 Cal.2d 855, 859.) An encroaching party can act intentionally and "yet be innocent if he acted in good faith. Moreover, [the property owner] could have induced [the encroaching party's] good faith belief without expressly consenting." (*Id.* at pp. 859-860 [reversing judgment denying injunction to remove building extension and remanding for trial court to take additional evidence of innocence where evidence at trial on whether plaintiff acted in good faith was conflicting and court failed to make good faith finding].)

The trial court found Ma and her tenants had been using the Mt Son driveway since at least the mid-1980s for trash removal, gardening, and maintenance, and their use was with the "clear consent (or perhaps 'non-objection') of the then-owner of the subject driveway property." The court rejected Ma's claim for a prescriptive easement because "there was no 'hostile' intent by [Ma] (nor by her tenants, etc), for the many years they actually utilized the driveway prior to [Mt Son] purchasing it." These findings were tantamount to a finding Ma's use was innocent rather than "willful or negligent."[10] And they were supported by substantial evidence. In addition to Ma's longstanding use of the Mt Son driveway, Ma testified her parents installed the metal fence and gate between the Ma and Mt Son properties in 1983 or 1984 because Svetich (or perhaps his father) complained that Ma's tenants were using the driveway to park their cars in the backyard of the Ma property. Although Svetich disputed that the gate was in continuous use over thirty-five years, he admitted the restaurant tenants used the gate to remove trash as early as

---

[10]     It is undisputed Ma and her tenants did not use the driveway after Mt Son erected the wooden fence and trees.

18

2017, and he acknowledged Ma's use of the gate and driveway would have been conspicuous to anyone in the area because "they saw the gate" and knew it was not there "for show." Further, Ma's tenants stored their trash cans on the vacant lot in the backyard of Ma's property.

Absent from the record is any evidence, including from Svetich (whose family owned the Mt Son property from the late 1970s) or Davis (who lived on the property for 25 years), that anyone ever told Ma's family, the gardener, or the tenants that they did not have a right to use the Mt Son driveway to access Ma's backyard through the gate. Likewise, Ota, who worked on the Ma property since the mid-1980s, testified no one ever said anything to him.

Mt Son argues that Ma's trespass was willful because Ma admitted a recorded easement had allowed access to the Mt. Son property, and the easement had long since expired, yet Ma continued to use the property as if she still had the legal right to do so. Mt Son's argument is not supported by the record. First, there was no evidence Ma or her family were aware of the 1971 easement, which on its own terms would have expired when Rauch sold the property. Second, even if Ma had constructive knowledge of the 1971 easement as a recorded document, the easement only granted Rauch use of the driveway for drainage, not passage for trash bin removal, maintenance, and gardening. Third, even if the express easement had authorized such uses— as the trial court appears to have found (albeit incorrectly)—the fact Ma's family and tenants continued to use the driveway for 38 years after expiration of the easement (from 1980 to 2018) without any objection from the owners of the Mt Son property undermines any inference Ma should have been aware use of the driveway was prohibited by the easement's expiration.

19

*Ranch at the Falls LLC v. O'Neal, supra*, 38 Cal.App.5th 155, relied on by Mt Son, is distinguishable. In that case, the Court of Appeal held the trial court abused its discretion in granting a ranch owner an equitable easement over private streets in a housing subdivision as an alternate route for large trucks accessing her ranch instead of using a dilapidated bridge because the court did not consider the evidence showing the ranch owner's lack of innocence, including that she knew when she purchased the ranch that the primary access was in disrepair, the private subdivision streets had not yet been built, and she first started having trucks access her property only after she discovered a viable secondary route. (*Id.* at pp. 184-186.) Here, there is no evidence Ma at any time had reason to doubt she was entitled to use the Mt. Son driveway to access her backyard for trash bin removal, maintenance, and gardening.

2. *Relative hardships*

As to the third element for an equitable easement, the trial court found "[t]here is no 'undue' prejudice against [Mt Son] for such a reasonable and limited use under the applicable 'relative hardship' test," citing to *Hirshfield, supra*, 91 Cal.App.4th 749 at page 759. As discussed, this test requires that the benefit of the easement "'"must be greatly disproportionate to the hardship"'" imposed on the servient property. (*Tashakori, supra*, 196 Cal.App.4th at p. 1009; accord, *Romero, supra*, 78 Cal.App.5th at pp. 358-359; *Hirshfield*, at p. 759.)

Substantial evidence supported the trial court's finding the hardship Ma would experience from losing access to the Mt Son driveway would be greatly disproportionate to the harm Mt Son would suffer from her use. With respect to removal of the trash bins, Mikailian testified he received complaints from Ma's

20

tenants about having to carry trash bins once or twice a week up a flight of stairs and through the business interiors for curbside removal. And Matias cited the need for its employees to drag trash bins through its restaurant as a ground for terminating its restaurant lease. With respect to yard work, Ota testified that since Mt Son blocked access to the driveway, his employees had been parking their vehicles in the automotive store parking lot on the east side of the Ma property, jumping over the wall, and tossing the yard waste over the wall. Further, he was rethinking his service to the property "because it's a hassle to go there."

By contrast, the only hardship identified by Mt Son was its potential premises liability from use of the driveway by Ma, her tenants, and her employees, which the court mitigated by requiring Ma to indemnify Mt Son and hold it harmless as part of the equitable easement. Tamrazyan suggested he might in the future want to place a daycare on the Mt Son property, and "[i]t might not fall into the codes" if Ma had driveway access. But Tamrazyan testified he changed his mind about the daycare after he blocked Ma's gate, and there was no evidence the easement was incompatible with use of the Mt Son property for a daycare. Moreover, in the April 5, 2022 order denying a new trial, the trial court stated it found Tamrazyan's testimony regarding a daycare "not credible."[11] We defer to the trial court's credibility finding.

*Tashakori, supra*, 196 Cal.App.4th 1003 and *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259 (*Linthicum*), both

_____

[11] The trial court also stated in its April 5, 2021 order that "if there is a future material change of circumstances which would warrant a modification or termination of the equitable easement awarded by this court, [Mt Son] is free to seek such relief, as allowed by law."

21

involving landlocked properties, are directly on point. In *Tashakori*, the Court of Appeal held the trial court did not abuse its discretion in awarding purchasers of an undeveloped lot an equitable easement over a shared road on a neighbor's property, after the trial court found the plaintiffs purchased the lot with the innocent (but mistaken) belief an easement to the public road existed, and the defendants "would suffer virtually no harm at all" from the plaintiffs' use of the shared driveway, and the plaintiffs would be irreparably harmed if they were denied the only means to access the property. (*Tashakori*. at p. 1010.) Similarly, in *Linthicum* the court held the trial court did not abuse its discretion in granting an equitable easement allowing a landlocked parcel to use a roadway over the neighbor's property where the roadway did not substantially interfere with the neighbor's right to use and develop his own land, and the neighbor's testimony to the contrary was not credible. (*Linthicum*, at p. 267.)

More recently, in *Romero, supra*, 78 Cal.App.5th 326, our colleagues in Division Eight affirmed a trial court order granting an equitable easement to a property owner whose property encroached upon the neighbors' property by nearly eight feet— including part of the neighbor's driveway and a wall—due to an unrecorded lot line adjustment made decades earlier. The trial court found the encroaching party's hardships greatly outweighed the harm the neighbor suffered from the encroachment because without an easement, the encroaching party's driveway would be narrower than the municipal code allowed, and large vehicles would not be able to use the driveway, reducing the property's value by $133,000, whereas the encroachment diminished the value of the servient property by $67,000 to $71,000. (*Id.* at p. 359.)

C. *The Trial Court Did Not Abuse Its Discretion in Granting an Equitable Easement Without Compensation*

Mt Son argues the granting of an equitable easement without compensation was itself inequitable. "'It is true that when the trial court creates an easement by denying an injunction, the plaintiff is ordinarily entitled to damages.'" (*Tashakori, supra*, 196 Cal.App.4th at p. 1014; accord, *Linthicum, supra*, 175 Cal.App.4th at p. 268; see *Christensen v. Tucker* (1952) 4 Cal.App.2d 554, 559 [a court can on equitable grounds deny a plaintiff's claim to enjoin an encroachment and instead compel the plaintiff to accept damages].)

"However, '[t]he trial court cannot award damages in the abstract.'" (*Tashakori, supra*, 196 Cal.App.4th at p. 1014 [trial court did not err in failing to award damages for use of equitable easement where the servient property owners "had not demonstrated that their property would suffer any diminishment in value as a result of permitting the [plaintiffs] to access Lot 18 via the driveway that was already being used by several other neighbors to access their property."]; accord, *Linthicum supra*, 175 Cal.App.4th at p. 268 [trial court did not err in failing to award damages where the court found not credible the servient property owner's testimony that the easement over his roadway would prevent any development of his property and reduce the property's value by $900,000].)

Mt Son did not seek compensation at trial or in any briefs it filed prior to entry of judgment (other than the indemnity agreement). Nor did Mt Son present evidence of the reduced value of its property due to the easement, which simply restored uses of the driveway that had been ongoing for at least 38 years without compensation. And Tamrazyan's testimony he might one

23

day want to install a daycare that might not be code compliant with an easement was speculative.

D.    *The Trial Court Did Not Abuse Its Discretion in Denying Mt Son's Posttrial Motions*

Mt Son's posttrial motions were based on its contention Ma failed to present evidence supporting the three required elements for an equitable easement and the trial court failed to make findings on the elements.  As discussed, although the January 12, 2022 order did not expressly refer to the innocence factor, the court made findings that Ma did not have a "hostile" intent in using the property, she had for many years used the driveway, and Mt Son had never objected to her use.  Further, substantial evidence supported these findings.  With respect to the third element, the court directly addressed the parties' relative hardships, which finding was also supported by substantial evidence.  Thus, the court did not err or abuse its discretion in denying Mt Son's motions.[12]

---

[12]    With respect to Mt Son's motion for a new trial, we review denial of the motion for an abuse of discretion, although we review the court's factual findings for substantial evidence. (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 514, fn. 7; see *People v. Johnson* (2019) 8 Cal.5th 475, 524 ["We will not disturb a trial court's denial of a motion for a new trial unless 'a "manifest and unmistakable abuse of discretion"' clearly appears."].)  Likewise, "[t]he denial of a motion to reopen a case for further evidence 'rests upon the sound discretion of the trial court.' [Citation.]  'That discretion should not be overturned on appeal absent a clear showing of abuse.'" (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 886; accord, *Sanchez v. Bay General Hospital* (1981) 116 Cal.App.3d 776, 793.)

Mt Son contends the trial court erred in finding in its April 5, 2022 order that "any legal arguments now proffered by [Mt Son] ha[ve] been waived by its failure to make such legal arguments at the time of the trial." Mt Son argues the issue was not forfeited because the elements of an equitable easement were raised by Ma, if not Mt Son, earlier in the action, and in any event, a party need not preserve an objection that a judgment is unsupported by substantial evidence. We agree the trial court erred. Mt Son's failure to address equitable easement in his closing brief did not forfeit its challenge to the judgment on the grounds that the court misapplied the law and the evidence did not support the judgment. (See § 663, subd. 1 [a judgment may be set aside and vacated based on an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts" provided it materially affects the substantial rights of the party].)

However, the trial court's error in finding forfeiture was harmless because the court found in the alternative that "to the extent there has been no waiver of the argument," the court's decision would have been unchanged because all the requisite findings on the elements of an equitable easement could be

---

When a party seeks to vacate a judgment under section 663 as legally erroneous, we review the judgment independently because the court's initial decision "was either right or wrong." (*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15.)

reasonably implied from the court's findings, and the evidence at trial was sufficient for the court to grant an equitable easement. As discussed, we agree with these findings.

## DISPOSITION

The judgment and the order denying the posttrial motions are affirmed.  Ma is entitled to recover her costs on appeal.


                                          FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.